**Lorraine EHRICH, Plaintiff,**

v.

**A.G. EDWARDS & SONS, INC. and Harold S. Neff, Defendants.**

Civ. No. 85–5199.

United States District Court, D. South Dakota, W.D.

Dec. 18, 1987.

Gregory A. Eiesland and Jay C. Shultz, Lynn, Jackson, Shultz & Lebrun, Rapid City, S.D., for plaintiff.

J. Crisman Palmer, Gunderson, Palmer & Goodsell, Rapid City, S.D., Stephen H. Rovak, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

BATTEY, District Judge.

### HISTORY OF THE CASE

The Plaintiff Lorraine Ehrich filed her complaint against A.G. Edwards & Sons, Inc., a futures contract commission merchant, and Harold S. Neff, a broker employed as an agent for A.G. Edwards. The complaint set forth separate causes of action alleging (1) violation of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.;* (2) common law fraud and deceit; (3) breach of fiduciary duty; and (4) negligence. The action involves the acts and conduct relating to the management of the commodities fund established with A.G. Edwards by the Plaintiff and her husband, Robert Ehrich. Actual and punitive damages are sought.

On March 14, 1986, this Court ordered that the controversy be submitted to arbitration as required by the Customer's Agreement [1] and Addendum [2] dated June 8, 1981, signed by the parties.

In due course Arbitrator Gary L. Monserud was appointed and on May 30, 1987, entered an award of $290,785.75 as follows:

1. COMPENSATORY DAMAGE: For the commissions on the joint account constituting an ill-gotten gain RESPONDENTS, A.G. Edwards and Sons, Inc. and Harold S. Neff, are jointly and severally liable to Lorraine Ehrich, hereinafter referred to as CLAIMANT, for the sum of $2,644.00 plus $1,724.00 which is interest to the date of this Award. RESPONDENTS are jointly and severally liable to CLAIMANT for the sum of FOUR THOUSAND THREE HUNDRED SIXTY–EIGHT DOLLARS AND NO CENTS ($4,368.00).

2. COMPENSATORY DAMAGE: For commissions on the joint account constituting ill-gotten gain RESPONDENT, A.G. Edwards and Sons, Inc. is liable to CLAIMANT in the amount of $12,464.00 plus $8,128.00 which is interest to the

1. Paragraph 14 of the Customer's Agreement provided:

    Any controversy between the undersigned and the Firm or any of its officers, directors, agents or employees, arising out of this agreement or the performance or breach thereof shall be settled by arbitration in accordance with the rules of the American Arbitration Association, the National Association of Securities Dealers or such securities or commodities exchange as the undersigned may elect. If the undersigned fails to notify the Firm of such election in writing within five days after receipt from the Firm of a request for arbitration, then the Firm may make such election on behalf of the undersigned. The award of any arbitrators appointed pursuant thereto shall be final and judgment upon the award rendered may be entered in any court having jurisdiction. The provisions of this paragraph are applicable to commodity accounts only if agreed to by the undersigned in a separate endorsement. This paragraph shall not apply to any controversy involving a non-spurious claim under federal securities laws.

2. The Addendum was merely an express acceptance of the provisions of the Customer's Agreement relative to the settlement of controversies by arbitration.

date of this Award. Therefore, in addition to its joint liability under Item No. 1, RESPONDENT, A.G. Edwards and Sons, Inc., is liable to CLAIMANT FOR TWENTY THOUSAND FIVE HUNDRED NINETY–TWO DOLLARS ($20,-592.00).

3. COMPENSATORY DAMAGE: For Claimant's losses on the joint account for checks wrongfully endorsed, RESPONDENT, A.G. Edwards and Sons, Inc., is liable to CLAIMANT in the amount of $97,341.00 plus $71,143.75 which is interest to the date of this Award. Therefore, in addition to its joint liability under Item No. 1 and its liability under Item No. 2, RESPONDENT, A.G. Edwards and Sons, Inc., is liable to CLAIMANT for an additional ONE HUNDRED SIXTY–EIGHT THOUSAND FOUR HUNDRED EIGHTY–FOUR DOLLARS AND SEVENTY CENTS ($168,484.75) [sic].

4. EXEMPLARY DAMAGES: For the joint checks purposefully and wrongfully endorsed, RESPONDENT, A.G. Edwards and Sons, Inc., is liable to CLAIMANT for NINETY SEVEN THOUSAND THREE HUNDRED FORTY–ONE DOLLARS AND NO CENTS ($97,341.00) as exemplary damages.

On June 8, 1987, the Plaintiff petitioned this Court to confirm the arbitration award as filed and to issue judgment pursuant thereto.[3] Defendants A.G. Edwards and Harold S. Neff assert that the award sought to be confirmed by the Plaintiff includes an award made in excess of the power of the arbitrator and includes a material miscalculation of the figures adopted by the arbitrator. Specifically, the Defendants allege that (1) the award of actual damages included in paragraph 3 of the award should have been $23,688.68 and interest of $14,895.42; (2) the award of exem-

plary (punitive) damages in the amount of $97,341, a figure identical to the award of actual damages, was not permitted by law and the contract of the parties; and (3) in the event exemplary damages are awardable, that the amount awarded ($97,341) contains a material miscalculation of figures and should accordingly be modified.

### DISCUSSION

Arbitration is increasingly being used as an alternate means of dispute resolution. The foundation for arbitration is the agreement of the parties. In this case, the Defendants offered and the Plaintiff accepted a contract providing for dispute resolution by arbitration. Presumably the parties were indicating their preference for the process of arbitration as opposed to judicial resolution. Having bargained for arbitration, the parties are to be held to that bargain. In such case, the Court has only a limited role in the process. *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108 (2d Cir.1980) citing *I/S·Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir.1974) and other cases.

■ Under the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982) (Act), where the parties have agreed to seek dispute resolution by arbitration, the courts are asked to stay their hand. *Merrill Lynch, Pierce, Fenner & Smith v. Hovey*, 726 F.2d 1286, 1289 (8th Cir.1984), citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The scope of the arbitration agreement must be interpreted liberally and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone*, 103 S.Ct. at 941 and note 27. *See also Shearson/American Express, Inc. v. McMahon,*

---

**3.** 9 U.S.C. § 9 reads: If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in

sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

— U.S. ——, 107 S.Ct. 2322, 2337, 96 L.Ed.2d 185 (1987).

The issue now to be decided is the extent to which this Court may now exercise its statutory function to confirm that award.

The Act provides authority for a court to either vacate[4] or modify[5] an arbitration award.

In *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743 (8th Cir.1986) *cert. denied* —— U.S. ——, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986), Chief Judge Lay, writing for the panel, discussed the rules of law limiting judicial review and the judicial process in the arbitration context stating that such rules are "well established." *Id.* at 751. Judge Lay points out at footnote 12 that the initial attractiveness of dispute resolution by arbitration has waned with the experience of now finding that arbitration often does not provide simple, inexpensive, and expeditious dispute resolution but rather "is complex, expensive and time consuming," the "results" of which, "by private and untrained 'judges,' are distantly remote from the fair process procedurally followed and application of principled law found in the judicial process." *Id.* at 751.

The Defendant A.G. Edwards sought to avoid judicial resolution of any disputes with its customer, the Plaintiff. It now should be held to its bargain which is to accept the limited scope of the review by this Court under these well-established rules. To permit a full scale trial de novo by this Court would only frustrate the process and provide an additional remedy not covered by the contract between the parties. The Defendant is not entitled to a second bite out of the dispute resolution apple.

■ In its limited role the Court shall consider whether there was an evident miscalculation of figures, 9 U.S.C. § 11(a), or whether or not arbitrator Monserud exceeded his powers, 9 U.S.C. § 10(d). In the context of the issues of this case, these grounds constitute the only grounds for vacation or modification.

In *United Elec. Radio & Mach. Workers v. Litton*, 704 F.2d 393, 395 (8th Cir.1983), *rev'd en banc* 728 F.2d 970 (1984),[6] the court stated:

In reviewing an arbitration award, a court does not reexamine the merits of the respective parties' claims, but gives deference to the arbitrator's decision so long as it "draws its essence" from the

---

4. 9 U.S.C. § 10 reads: In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

5. 9 U.S.C. § 11 reads: In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award

upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

6. On rehearing en banc the court in a 5–4 decision reversed, but in so doing did not reverse as to the substantive rules of law applied by the panel, but rather on the application of such rules to the facts. The court divided over the issue of whether under the facts the decision of the arbitrator drew its essence from the agreement. Neither case is express authority on the issue of whether, under appropriate factual circumstances, an arbitrator can award punitive damages; however, both cases arguably contain an implicit authorization to do so.

collective bargaining agreement. Judicial deference to arbitration, however, does not grant carte blanche approval to any decision that an arbitrator might make. A court may vacate a labor arbitration award if the arbitrator makes a central factual assumption that is unsupported by the record, grants a punitive award in the absence of any provision for punitive awards and of any substantiating proof of willful or wanton conduct, or contravenes a limitation contained in the collective bargaining agreement.

*Id.* at 395 (citations omitted).

The en banc court quoted Justice Blackmun in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960) as follows:

Under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous. (Citations omitted.)

*Litton* at 971.

In referring to the scope of the arbitration award, Rule 43 of the Securities Arbitration Rules of the American Arbitration Association provides:

The arbitrator may grant any remedy or relief which the arbitrator deems just and equitable and within the scope of the agreement of the parties.

The contract provision in this case and the broad scope of the arbitration rule as to remedies are indeed broad. The assessment of punitive or exemplary damages [7] is a well recognized remedy for redress of those wrongs which go beyond that of ordinary or even gross negligence. An article on the subject of punitive damages which covers practically every aspect of the problem facing this Court is *Punitive Damages in Arbitration—Garrity v. Lyle Stuart, Inc., Revisited,* 66 B.U.L.Rev. 953 (1986), by Stipanowich. The purpose of punitive damages is simply to punish the wrongdoer. *Gross v. Kouf,* 349 N.W.2d 652, 654 (S.D.1984); *Hulstein v. Meilman Food Industries, Inc.,* 293 N.W.2d 889, 892 (S.D. 1980). Courts have held that broad arbitration provisions include claims for punitive damages. *See Willis v. Shearson/American Express, Inc.,* 569 F.Supp. 821 (D.C.N. C.1983).

■ The arbitrator characterized the actions of the Defendants as "egregious," likening the forgeries to conversions, consequently awarding punitive damages in the amount of $97,341. Whether he was correct in his conclusions both as to the award or the amount thereof is not for this Court to decide. As stated, A.G. Edwards, in a contract which it provided as a prerequisite to "doing business," insisted by terms of the contract provisions for the settlement of disputes by arbitration. It now has no cause to complain.

The legislative history of the Futures Trading Act of 1982 reveals that the Committee on Agriculture (to whom the original bill (H.R. 5447) was referred, and later amended with a do pass recommendation) gave special attention to the enforcement program of the Commission to assure that the public would be adequately protected against fraud. The intent of the law was to "improve the machinery by which a commodity customer can obtain relief for viola-

7. SDCL 21-3-2 provides: In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

tions of the Act by industry professionals." H.R. No. 97–565, part I, page 54–55, 97th Cong.2d Sess., 1982 U.S.Code Cong. & Admin.News 3871, 3903–04. The report of the Committee went on to state:

> The alternative remedy of arbitration [under former law] was of limited value because of statutory restrictions on its use and the delay in organization and development of the National Futures Association, which was expected to provide an additional arbitration forum....
>
> [The Comptroller General in his testimony before the Committee] recommended [that in addition to simplification of the rules and procedures] that steps be taken to make arbitration a more effective alternative to reparations—among these removing the statutory limitations on the size of claims which would be arbitrated.

*Id.*

The amendments of the 1982 Futures Act relieved the Commodities Futures Trading Commission as respecting reparations procedures by allowing an aggrieved person the option of bringing a private right of action against the violator of the Act or by avoiding such courtroom litigation by providing an "equally viable form for resolving claims in excess of $15,000." 1982 U.S.Code Cong. & Admin.News 3905–06.

The legislative history of the Commodity Exchange Act lends itself toward an award of punitive damages in this case. In 1982, Congress specifically removed the dollar limitations on arbitration claims brought against violators of the Act. Instead of adopting "costly new layers of regulation," Congress reduced the load of the Commodities Futures Trading Commission by providing for private rights of action or alternatively, by resolution of grievances via arbitration. The Commodity Exchange Act prohibits fraud. Without the threat of pu-

nitive damages, agreements to arbitrate would not effectuate Congressional intent.

The Court finds that *Willoughby Roofing & Supply Co. v. Kajima International, Inc.*, 598 F.Supp. 353 (N.D.Ala.1984) *aff'd* 776 F.2d 269 (11th Cir.1985) provides authority for this Court's holding. *Willoughby* involved Construction Industry Arbitration Rule 43.[8] This rule is the same as Rule 43 of the Securities Arbitration Rules. The terms of the agreement in *Willoughby* were as broad as were the terms in the agreement now under consideration. *Willoughby* followed the Eighth Circuit rules that an arbitrator's award must be upheld as long as it "draws its essence" from the agreement.[9] Further, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority.[10] Indeed, *Willoughby* cited *Lackawanna Leather Co. v. United Food & Commercial Workers*, 706 F.2d 228 (8th Cir.1983) as embodying such rules of construction. As in *Willoughby*, in the present case the award of punitive damages is neither explicitly nor implicitly prohibited. Indeed, it is all but expressly authorized. In this Court's opinion, *Willoughby* furnishes the final authority on the issue of whether punitive damages may be awarded in this case. The Supreme Court has recently acknowledged that RICO is within the ambit of the arbitration act. RICO provides for the remedy of treble damages which, of course, are punitive in nature. *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2322, 2336, 96 L.Ed.2d 185 (1987). This Court believes that *Shearson* lends support toward the availability of punitive damages in arbitration cases.

This Court has noted a slight reference to the fact that punitive damages may not be awardable in arbitration in the case of *Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59 (8th Cir.1984). The

---

**8.** Rule 43 of the Construction Industry Arbitration Rules provides that, "The arbitrator may grant any remedy or relief which is just and equitable and within the terms of the agreement of the parties...."

**9.** *United Food & Commercial Workers, Local 222 v. Iowa Beef Processors, Inc.*, 683 F.2d 283, 285 (8th Cir.1982).

**10.** *Resilient Floor and Decorative Covering Workers, Local 1179 v. Welco Mfg. Co.*, 542 F.2d 1029 (8th Cir.1976).

issue before the Court of Appeals was whether or not arbitrable claims should be referred to arbitration when they are joined with nonarbitrable claims where the claims are factually intertwined. In arguing against referring fraud claims to arbitration, it was urged that to refer such claims to arbitration would be to deny the recovery of punitive damages. The Court stated at page 63: "This, however, is what the parties contracted for." This statement in retort is hardly authority for the proposition that punitive damages are not recoverable in arbitration.

Defendants urge the Court to adopt the rule of *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976). *Garrity*, however, dealt with the power of arbitrators under state law. Federal law applies here and *Garrity* is inapplicable.

Given the strong federal policy in favor of upholding an arbitrator's ability to fashion appropriate remedies and the legislative history of the Commodity Exchange Act supporting the remedy of arbitration, this Court finds that the arbitrator's award of punitive damages was within the scope of the parties' agreement to arbitrate. Consistent with this opinion the award of punitive damages will be upheld.

The Court must now consider the Defendants' argument requesting the Court to set aside the award for error in miscalculation.

█ The Court may not review the merits of an arbitrator's award. *Timken Co. v. Local 1123, United Steelworkers of America*, 482 F.2d 1012, 1014 (6th Cir. 1973). Monetary awards will be upheld as long as such awards bear a logical relationship to the evidence or as long as they rest upon a rational basis. *Industrial Mut. Ass'n v. Amalgamated Workers Local 383*, 725 F.2d 406, 412 (6th Cir.1984). The Supreme Court has declared that the fact that an arbitrator's opinion is susceptible of varying interpretations is of no moment in the determination of the validity of the accompanying award. *Amoco Oil Co. v. Oil, Chem. and Atomic Workers Int'l, Local 7-1, Inc.*, 548 F.2d 1288, 1294 (7th Cir.

1977), *citing United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).

A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority is not a reason for refusing to enforce the award.

*Id.*

Paragraph 3 of the arbitrator's award in this case states, "Compensatory damage: for claimant's losses on the joint account for checks wrongfully endorsed...." The Defendants argue that this language combined with the arbitrator's intent as set forth in his order to the effect that "Lorraine Ehrich will be entitled to money which she should have received from the marital estate, had it not been depleted," lends to an interpretation that the intention of the arbitrator was to award one-half of the losses on the joint account during the period of wrongful endorsement. A decision on this issue would require this Court to examine the arbitrator's rationale beyond the point of merely finding that the arbitrator's decision is within the bounds of rationality and draws its essence from the contract.

█ The award in paragraph 3 set forth damages of $168,484.75 representing losses found to have been sustained for checks wrongfully endorsed. Admittedly, it contains a mathematical error as to the number of months to which interest should have been applied, 73 months instead of 63 months, resulting in an error of $9,818.92 (1% per month for 63 months equals $61,324.83 instead of 1% for 73 months equaling $71,143.75). The award shall be accordingly reduced.

█ Defendant would have this Court examine the intention of the arbitrator and then upon such examination examine the award to see if the mathematical calculations fit the intent of the arbitrator. Such a process would go beyond the clear import of 9 U.S.C. § 11 which refers to an "evident miscalculation of figures." Mathematical miscalculations refer to the applica-

tion of the science of mathematics and the statute does not inject an additional element of requiring the Court to examine the "intent" of the arbitrator. The confines of this Court's review being limited, the Court believes the Defendants' request to examine the arbitrator's intent and then the award itself to see if the intent and the award coincide is too great an extension of this Court's mandate provided by statute.

Given the limited scope of review as set forth in the case law governing the application of 9 U.S.C. §§ 10 and 11, this Court does not believe that the Defendants' interpretation of the arbitrator's award and memoranda should prevail. Absent a manifest disregard of the law or a finding that the award was irrational, this Court is not disposed to modify the award respecting the compensatory damages awarded the Plaintiff for the wrongfully endorsed checks. *See Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 749 (8th Cir.1986). This Court finds that although the arbitrator's award may not have been the award which this Court would have made upon the facts, it will nevertheless be confirmed.

### AWARD RECAPITULATION

The award shall be computed and confirmed as follows:

| | | |
|---|---|---|
| Paragraph 1 Compensatory damages | | $ 4,368.00 |
| Paragraph 2 Compensatory damages | | 20,592.00 |
| Paragraph 3 Compensatory damages | | 168,484.00 |
| Less agreed interest error | | (9,818.92) |
| Paragraph 4 Punitive damages | | 97,341.00 |
| | | $280,966.08 |
| Interest @ 18% from May 30, 1987 to June 30, 1987 | | 4,354.88 |
| Interest from July 1, 1987, to date of judgment December 18, 1987, at 15% 171 days @ $117.07 | | 20,018.97 |
| Total judgment | | $305,339.93 |

### CONCLUSION

Both parties agreed to settle any controversy arising out of their relationship by arbitration. After a five-day evidentiary hearing, and after having been presented with legal arguments on the question of punitive damages, the arbitrator awarded

Plaintiff both compensatory and punitive damages. Given the strong federal policy in favor of arbitration, the flexibility given arbitrators in fashioning remedies, and the provisions of the Commodity Exchange Act prohibiting fraud and providing individuals with the option of arbitration to enforce their rights under that Act, this Court holds that the award of compensatory and punitive damages should be upheld. This Court further holds that the only error in the computation of the award was with respect to the amount of interest calculated on the compensatory damages for the wrongful endorsements. The remainder of the award bears a logical relationship to the evidence and must therefore be upheld. Judgment shall be entered according to this memorandum opinion.